Next case this morning is Abasi Investment v. Tibet Pharmaceuticals. Mr. Hartzell. Good morning. May it please the court. My name is Neal Hartzell. For Appellant L. McCarthy Downs III. I'd like to reserve three minutes for rebuttal out of my ten minute time period. Mr. Tremonti will speak on behalf of Mr. Zell. We're asking this court to reverse the District Court's partial denial of summary judgment on the 11A3 claim and enter an order that summary judgment in Appellant's Mr. Downs and Mr. Zell's favor should enter dismissing the 11A3 claim. The standard of review before this court I don't think is in dispute. It's a de novo review. The Rivera v. City of Passaic case we cited in our papers. I just I want to briefly discuss the procedural history and then talk about what's in the prospectus. There's a class action case. A group of investors in Tibet Pharmaceuticals claim there were material misstatements in the initial public offering registration documents. That's conceded. Is that right? For the purposes of the purposes of what here? Yes. We're not. Yes. They sued the individual directors of Tibet Pharmaceuticals itself, its U.S. based auditor, and the underwriter, a company called Anderson & Strudwick, and two other individuals, Mr. Downs and Mr. Zhu, who are named as board observers in the prospectus. Mr. Downs was an employee of Anderson & Strudwick. The plaintiff settled with the auditor and with Anderson & Strudwick. No director has appeared in the case. Their claims against one of the U.S. based directors were dismissed for failure to make timely service. Following discovery, Mr. Downs and Mr. Zhu moved for summary judgment. All claims against them were dismissed except for this 11A3 claim. The language in the prospectus said board observers who may significantly influence the outcome of matters present to the board. The district court believed that that language created a fact issue as to whether board observers were performing similar functions to board of directors members. It's that language that brings us here today. Why is it? Well, your position is that it's a matter of law, not a matter of fact. The final. Yes. How can we take issue with the appellant's invocation of the SEC inside trading release when you actually relied upon the SEC interpretation in your opening brief? Well, I believe there's two different SEC interpretive rulings, Your Honor. The one that we cited lists sort of what directors are doing, what directors are not doing. We believe it supports our position. But you took issue with the plaintiff's position considering they're looking at the inside trading rules, which were not so rosy for your position. Well, inside trading at one level, the inside trading rules don't really apply to this case. We're looking for because there's a dearth of authority with the exception of the Merseyne and Lockheed cases that discuss what the meaning of 11A3 is performing functions similar to. We were looking at other sources that were defining who's a director, who's not a director. And we believe that SEC interpretation was supportive of our position as it defines the duties or sets forth the duties about who's a director and who's not. And we think in this case, when you look at the 11A3, it's a narrow construction because it's a strict liability statute as we know from the Herman case and the Lehman Brothers case. We believe it's not accurate as the plaintiffs claim that the statute allows the court to look at other factors because there's nothing in the text of 11A3 that suggests that the determination is limited to the prospectus. We just don't think that makes any sense. If that were the case, it would not say persons named in their prospectus. That's the critical language. We're looking at what does that mean in the context of being named in the prospectus. Being named is not a conduct-oriented provision as Section A5, which talks about underwriters, or Section A2, which talks about functioning as a director. Isn't it significant that Congress used the word similar rather than the identical or the same? Is it identical? I don't think it's identical. It's similar to the functions. If, for example, the. So you concede then if your clients voted, that starts to be quite similar to the functions of a director, right? It's very similar to some of the functions, certainly, but they had no power to vote. It specifically says in the prospectus the board observers have no power to vote. So we believe that the plaintiff's reading of this is an unnecessary expansion of this narrowly defined statute. But directors have other roles, other functions besides voting. There's no question about it. And we look at the language of the prospectus, which defines what the directors of this company, Tibet Pharmaceuticals, could do. And I just want to highlight some of them. As stated in the prospectus, Tibet's directors make all relevant decisions. They appoint officers, authorize payment of donations, authorize the company to borrow, to mortgage property, execute checks, promissory notes, set remuneration of directors, authorize stock redemption, approve mergers. Excuse me. The allegations in the complaint, if we can look at extrinsic evidence, show that Mr. Zhao did some rather significant things. Well, you're talking about Mr. Zhao. We contend that this court should not be looking at extrinsic facts. But the and I'll let Mr. Tremont speak as to what Mr. Zhao did or didn't do in connection with it. But none of these powers that are enumerated in prospectus were granted to either Mr. Downs or Mr. Zhu. Well, the directors had all those powers, but but also the observers had significant. Influence or outcome on. Of what the directors did, they could influence the directors as to maybe they didn't have the power, but they had the ability to influence. They had the ability, it says, may significantly influence the outcome of matters presented to the board. And that's what does that mean? Well, it's not a mandatory provision. Doesn't say shall. There's no language that says the directors shall accept any recommendations. All right. You told us what it doesn't mean. What does it mean? They have the option to provide advice. There was no limit placed on that option. That's what they could do. You're correct. It could conceivably be for any matter of the country. They could do anything a director could do. No, they can't vote. But they can't vote and accept vote. They could do everything else. Is that correct? No, they can't do everything else. They had no power to form committees. They had no power to form to set compensation. I'm talking about no power to call general meetings, no power to amend the articles of incorporation. The board members couldn't do any of those things, but they could influence all the decisions concerning those powers. They said may significantly influence. Not that they could influence. What does they mean in that context? What does they mean? It means that they could make. I believe it means make suggestions to the sitting board of directors. That's what I think it makes. It means it's not a mandatory clause. And without the ability to vote, I don't believe the board observers are stepping into the shoes in any way, shape or form of the board of directors. I see my time is up. I just want to before rebuttal, I just want to mention one other thing. May is the mere potential to offer suggestions without voting power does not make the board observers performing similar functions to a director. All right. Thank you, Mr. Russell. Mr. Tremonti. Good afternoon. May it please the court. Michael Tremonti. And here with my colleague, Justin, you know, we represent Hayden Zoo. The the key the key stone or the touchstone here, your honors. And in our view is the eleven eight three provision. It's a very narrowly tailored regulatory scheme which Congress fashioned to expose to liability a very narrow class of corporate actors, namely the individuals who control the company. And to the to the extent that we have any disagreement, does that mean the only reason this provision exists is to cover the situation where an entity does not follow the corporate formalities and actually name directors? I think it's a little bit broader than that, your honor. And here we agree with the district court. I think there could hypothetically be situations where corporate formalities are, in fact, observed. But the nomenclature is different. And so someone who doesn't actually have the title of director or partner, which are words that are actually used in the statute, nevertheless, has all of the power, all the authority that is required. It's a functional test, not a nominal test. It's exactly right. Just a bit of housekeeping. May I reserve two minutes, please? It was it was already. Thank you, your honors. And so to the extent that any courts have looked at this, the extent that there's any guidance from from a regulator, it all goes back to that touchstone. What is the regulatory scheme and is it narrow? So when courts have looked at this person's performing similar functions language, they've always said, what you have to do is functionally analyze whether or not the individual that you've got in the crosshairs is actually in control of the company. And you've got this reality in the world of corporations that have, on the one hand, boards of individuals who can actually control the company and who have the power to do that and advisers and observers and advisory boards that don't. And there's just never been a case. And we can think of no good reason why there would be. Well, why this second category of actors would be brought into the narrow regulatory mechanism of 1183. If we allow extrinsic evidence, that doesn't help you here. I don't think it hurts us at all, your honor. And here's why. Extrinsic evidence would only show as to Mr. Zoo, and I believe also as to Mr. Downs, if I won't speak for him, that they didn't engage in any activity after the registration statement became effective. That looks in any way like the activity of someone who controls the company or for that matter, just to be clear, your honor. I don't think they did anything in connection with the activities of this company, even trying to influence decisions of the board. So I think extrinsic evidence would only help our cause here, whether you're. And I think we agree with the district court that the proper analysis here is to just look to the language of the registration statement. Even if you take in evidence beyond that that's in the record, there would be nothing to support bringing Mr. Zoo and Mr. Downs within 11. Well, the problem might be just that they didn't do anything. They they they unlike anyone else that was involved in in working with the corporations had the ability to attend directors meetings and to give their opinions and so forth. No one else had that ability to attend the right to attend board of directors meetings and to influence directors actions. The only thing they didn't have, they couldn't be fired. They were they were there in perpetuity. Director, you can fire, but you can't fire these people. And they were in a position to influence what happened. How do you get around that one? Sure. So, your honor, I think it's very straightforward. The the other individuals who, of course, could have shown up at board meetings and done. And that's about right. They can't show up. Would have been board members. Only board members. And so to the extent that there was a board meeting called at which board members evaluated a proposition or exercise control over the company. Of course, Mr. Zoo and Mr. Downs had the right. So long as the triggering events never occurred, that would have terminated their observer status to attend those board meetings and speak. But I think there, you know, the analog that leaps to mind is the difference between, on the one hand, a member of Congress and on the other hand, a lobbyist. A lobbyist can exercise a tremendous amount of influence over all the things that congressmen do, congressmen and women. But at the end of the day, they can't vote. They're not answerable to their constituents. And they don't play a role in the constitutional system. You don't have to listen to a lobbyist. You've got to. These people have the right to attend the board meeting. They do. You don't have to have a lobbyist. You don't have to listen to them. You don't have to listen to them. Again, they don't have to. The board members who control the company can completely ignore anything that's proposed. I don't see how the analogy is apt. Having a lobbyist that has no power over what a congressman does, except to influence him if the congressman wants to listen. Whereas these people have the right to be there and to express their opinion, even if you don't like their opinion. And your honor, there's record evidence, for example, that Mr. Downs actually proposed a share buyback mechanism to the board. And it was rejected. And I believe that's the only instance in the record of either of these two observers attempting to exercise influence. And their suggestion was rejected. So I think it's clear that at the end of the day here, the only individuals, the only persons within the language of the statute exercising control are the board members. And on the only occasion that I'm aware of where the observers proposed something, it was rejected. Flat out. So I see that my time is up. I just have one quick question. And I'll ask this of plaintiff as well. What do we make of the fact that the district judge here said that probably there's no liability or maybe there is no liability under 11A2? How does that play into your analysis at all? So we think it's clear that under 11A2, as the district court found, there's simply no evidence on the basis of which a juror could fairly infer that Mr. Zhu or Mr. Downs were board members at the time the registration statement became effective. So whether you view it under A2 or, as I said earlier, under A3, the extrinsic evidence to our mind only helps our position. Thank you. Thank you, Mr. Tremonti, Mr. Rosen. May I please report? Lawrence Rosen on behalf of Obasi Investment, Mr. Dartell, Mr. Wu, and Mr. Carruthers. Do you agree that it's a functional test, Mr. Rosen? This isn't about what these folks are called. It's about what their powers are, what they do. Yes, I don't think title is determinative. I think the statute is intended to capture people who, and this was the Merce case, where they shun formal titles to avoid liability, but do have the ability to significantly influence the corporation's affairs. So you think all that matters is that they can significantly influence? What's the statutory language? The statutory language is liability accrues to every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, and a partner or a partner. All right, so here they're not directors, but they're, according to the lower court, persons performing similar functions, right? Yes. OK, well, let's talk about the functions of a director. Right. Directors vote for board action, correct? Yes. Only that only directors may vote. All right. Could Zao and Downs vote here? No, they could not. Directors select senior officers. Directors approve senior officers. Management generally recommends them, and directors approve them. Could Zao and Downs approve the senior officers here? They could influence the selection based on their positions, because when you're the investment banker that brings a company public, you have extraordinarily influence. You're the gatekeeper to the capital markets. You're the gatekeeper to investors. You're the help create the window to the market, and so you have a lot of influence to get them more money, to help with their financing. So you can influence the selection of senior officers, but you don't vote to select them, right? You don't actually have a vote, but you have... All right, what about executive compensation? Do directors control executive... do they set executive compensation? Directors approve it, yes. And did Zao and Downs have the power to approve the executive compensation? They had the ability to significantly influence and sway the board's approval of compensation. So they could suggest or recommend to the directors whether to approve, but they didn't have a vote on that? They can't vote, but they can push them and use their influence, both as the investment banker. Don't forget, Mr. Zao was not only the stock promoter, a shareholder, an early shareholder who got shares cheap early on. He orchestrated the whole company. He created the BVI structure, this wholly-owned foreign entity structure through this Hong Kong company. He controlled... he was the sole director and controlled the Hong Kong company that controlled the Chinese operations. So these guys had a lot of influence over how this company was going to operate. No doubt, no doubt. Influence the prime movers behind it, right, you would argue, I guess? Absolutely. Raising the capital? Raising the capital. Promoting the enterprise? Promoting the enterprise, yes. But all of that, I don't know how that helps you satisfy the statutory language. And isn't it the case that we need to be careful here and not construe a statute like this in a very capacious way because it is essentially a strict liability statute? Well, Your Honor, it's a negligent statute as to these individuals. As to the issuer, to that, it's strict liability. As to these folks, they have an affirmative defense of a reasonable investigation, reasonable due diligence investigation that they looked into the corporation and that they had no reason to believe the prospectus was false or misleading. The judge denied the motion for summary judgment, said they didn't prove, they didn't show that there wasn't a question of fact as to their doing a reasonable investigation. So that's the first thing. The second thing is I don't think the judge acted in a capacious way. If you looked at his decision, it's very, very strictly construed, the statute. He looked at each word, interpreted each word, gave it its dictionary meaning, and ascribed, you know, it didn't expand at all. He just said this is what the dictionary says this means. Significant influence means a great deal of influence, a measurably large amount. I'm with you on the influence. I think the record is sort of replete with influence, but what I'm struggling over is how does influence get you to performing similar functions? Because if directors were in the business of influencing corporate officers and influencing corporate policy, it seems you have a slam dunk. But my understanding is that directors actually set corporate policy. They don't just influence it. Directors have power. They have real power, and that power comes with the vote. In fact, they're fiduciary duties, and that these guys, you know, they had a fiduciary duty to the, not even to the company, but to the underwriter, right? Isn't that part of the law? Not to the underwriter. Isn't that part of the law? They have a contractual obligation to the underwriter. But, you know what I mean, I address that because that's an important issue, and that's part of the defendant's position, and I think it's important to debunk it. The right to vote, only directors will ever have the right to vote. Just directors. If you say a person has to have the right to vote in order to be liable under that statute, the statute's rendered meaningless because only directors have that right. No, because you could have all kinds of enterprises that don't use the word director that imbue, call them, let's say instead of being called directors, they're called partners or called controllers. Or, you know, let's say some crafty person was trying to do an end run around the statute and avoided the use of the word directors. This statute says if you perform the functions of a director, you're going to be in the crosshairs. But, Your Honor, I, you know, I know other companies. There's a company called, I'm working on it, I won't mention the name of it. They have a partnership. It's a public company, also Chinese, and they have a board of directors. The partnership has no right to vote. It has no right to vote. All it can do is recommend people for what it gets one recommendation for the board of directors, and that's it. That's only directors vote. That's the way corporations work. Only directors vote. Only directors vote. And so if you require that, you've rendered that provision of the statute meaningless, and that's against the statute. That's the only one problem with your argument. This is very crafty. I mean, I appreciate your saying that these people have, are really making, can influence what's going on here. But the problem is anyone in this case or in corporations could come in and influence the board of directors. You could be a salesman in the place. You could be a vice president. You could be anything at all. And you could influence what the directors are going to do. So that for you to say, well, they have this, you know, the influence and so forth, but the point of view is everyone has influence. These people here were ordained to influence what the voters do, but they couldn't vote. That's right. And the fact that they couldn't vote, only directors can vote. And so if you limit it to voting, you've wiped the statute out. No, no, no. It's the same thing. Respectfully, only officers and directors have fiduciary authority. I don't understand that argument because you could call them partners. You could call them all kinds of things and give them the power to vote. But under a BVI corporation, only directors can vote, right? It's corporate law, right? But if someone was, you know, setting up a fly-by-night operation and, you know, wanted to, you know, perpetrate a fraud, this is intended to prevent frauds, right? This is exactly what we have is a fly-by-night corporation, and this is exactly what the legislative intent is, is to capture these guys who created it. I mean, this company was dead on arrival months before the IPO. It was defaulted on its loans. So why would anyone invest in it? Ask Mr. Xu why he let this. He was the one who was bringing the information from China to the lawyers to put into the prospectus. He was the go-between, right? He was the person who was the signer on the bank account. He was the only signer on the bank account when $3.8 million in cash was withdrawn. Cash withdrawal was not a check. It was a cash withdrawal. And he was the only person who had access. So this is the type of thing it's supposed to capture. People who have control. So you assume for, you know, fraud, fraudulent conveyance, et cetera, et cetera, right? I mean, this is a regulatory statute that targets people who are performing the functions of directors, and we've got to make that determination, right? And here, but isn't it true that both Zhou and Downs, that their loyalty is really aligned here with the placement agent? Isn't that fair to say? Isn't that part of the problem? Downs is aligned with the placement agent. Especially Downs. Zhou is aligned with himself. He's, you know, he's in a different position. All right, and people performing the functions of directors have fiduciary duties to the company, and they have to act on the behalf and behest of the company, not on behalf of themselves, like Mr. Downs. That's a big suit. There are no fiduciary duties involved here. These two had no fiduciary duties, and if you're not an officer and you're not a director, there is no fiduciary duty. That's the tenet of corporate law. But how does that help you? That is yet another data point that says these people are not like directors. What it means is if you require a fiduciary duty or the ability to vote, you've rendered the statute meaningless. You've taken the words. Maybe that's where we should go. Maybe this statute is so vague and amorphous that it's unconstitutional because it doesn't really tell you who's really liable here because anyone can influence, as I mentioned, anyone can influence the board of directors, and the director could say, well, go fly a kite. I don't want to listen to you, which they could do with these people. So the mere fact that you can influence something doesn't make you a director. The director has the power. The person that's the influence, your adversary mentions lobbyists. They have influence. You don't want to listen to them. They have nothing. At the end of the day, it's a question of fact for the finder of fact. Is this person similar to that person? That's a question of fact. Well, they have no power. No power, so how could they be similar? They have the ability. They say in the prospectus that they have the ability to significantly influence the outcomes of matters of the board of directors. And so does the janitor who could come up and say, I want to give you some advice on how to clean the building. But does he really have the ability to do that? They listen to other employees. They take market surveys from employees. Is he the guy who controls the operations through the Hong Kong entity? What about the fact issue? I think you raise an important issue here, Mr. Rosen. What are the disputed facts? What would the jury, if it were to go to a jury, what would they be asked to discern here as a matter of fact? I think it's a fairly straightforward fact. Did these individuals, were they named as being persons performing functions similar to the directors? It's very simple. That sounds like a question of statutory interpretation. You just quoted the statutory language, and that seems like something we need to do. The law is to instruct, you instruct the jury, these are what directors are. These are what their functions are. And it's up to you, jury, to let these people perform. If I were the trial judge then, my jury instructions would say something like this. Directors vote for board action. Do you find, as a matter of fact, that Zhu and Downs voted for board action? Directors select senior officers. Do you find, as a matter of fact, that they selected senior officers? That's the kind of jury instruction you would have? I think directors do more than just select. What they do is they formulate the policy and strategy of the corporation, the direction. They decide things like, should we go into this business, should we go into this business? Should we withdraw $3.8 million from this bank account? Should we do another offering? All these things are things that these people have the ability to influence. When you influence something, you may not actually have the right to do the same thing. Remember, the statute doesn't say you have to be identical. I think they have to admit, and they have admitted, they have the ability to influence. So I'm still struggling with what the jury would be asked to decide. They've conceded, I think, we'll double check, that they have the ability to influence, and their answer is, under this statute, the ability to influence is not the same thing as perform the functions of a director. What I'm asking is, is that not a legal determination for us to say that those are the same things, you win, or those are different things, they win? I think any time you ask somebody, it's more like asking somebody, is that negligent? Would a reasonable person do that? It's the same as saying, does this look like that? Not if it's a question of statutory interpretation. It's strictly a question of law. It doesn't go to the jury. Judge Hartman wants to ask you, how do you charge a jury in a case like this if a jury can turn out either way? When you're doing a statutory interpretation, the statute can't turn out two ways, it's got to turn out one way. I think you give the jury a fair, balanced description of the various roles that a director plays in a corporation, and say, were these people named as being individuals performing similar functions? As a statutory interpretation, the legal definition of a director. So you think this is a jury question? Yes, absolutely, Your Honor. I think that the trial judge was right when he said there's enough evidence here to create a genuine issue of material fact as to whether these persons perform similar functions as directors. Do we look beyond the registration statement? I think we should. The trial judge said we should just look at the registration statement. I think that the jury should look beyond the registration statement because a director's, I'm sorry, an individual's board observer's powers and influence and ability to control and manage before the registration statement is filed can create a strong inference that those abilities, that management or control will continue after the registration is filed based on their position. And then afterwards, their conduct afterwards is indicative of whether they really did have those powers, whether they really had that ability to manage the affairs of the corporation. And I think here, both before and after, especially Mr. Zhao, I mean, he was a primary mover and promoter of this company, an orchestrator, before and afterwards, he controlled the assets of the company. He controlled the bank account and caused the spending, the withdrawal of the money. So I think it's important to let the jury look at that. And I think that's one thing on remand. I think the request to court affirmed the decision denying summary judgment and instructed at trial that the jury could look at that side of the perspective. Thank you, Mr. Rosen. Thank you, Your Honor. Mr. Herschel, rebuttal. To follow up on the last point, evidence in front of a trial, in front of a jury, on what the meaning of A3 is, is what the prospectus says. And that looks to me like a statutory interpretation would improperly delegate to a jury the role of a judge. So I just don't think that's accurate. Excuse me. Is the matter as simple as the statement that if there is no right to vote, that's pretty much the end of the question? Given the broad powers that are specifically laid out in the prospectus as to these directors and that they exercise those power for voting, I think it can be the end of the inquiry. The plaintiffs have spent a lot of time in their brief talking about all these other things that supposedly Mr. Zhou and Mr. Downs did. Even though we believe the court shouldn't go there, I want to point out two things. One, the statement, and Mr. Zhou's counsel can speak to it if he wants, but the statement that Mr. Zhou controlled the bank account is simply not accurate. The record reference that we have in our reply brief shows that that's not accurate. And when Mr. Downs, we talked about the proposal Mr. Downs made was something that the plaintiffs said, that's not accurate. What Mr. Downs did on behalf of Anderson & Struggles, the underwriter, and it says it right in the email, is that the underwriter is suggesting a stock buyback. That's all that happened. And they ultimately didn't go through. So I just want to clarify those two points. You don't deny, do you, that your client had the power to influence, significantly influence? I think you're equating the word may with power, and I don't agree with that. Ability to significantly influence. He had the ability to make suggestions. Which might have significantly influenced the company. I mean, in theory, in theory, these two board observers, if they were really smart, or their advice was really sound, or perhaps they were very influential people who exercised, you know, Svengali powers, I mean, the board, in theory, could follow every recommendation that they made. Just like the board, in theory, could follow every recommendation that the Chinese council, who's listed in the prospectus, gave advice to the board of directors. And I don't think... Right, so you have to acknowledge that's a possibility. Of course it's a possibility. But I guess your point is, it's also a possibility that they'd be completely ignored. Yes. And the fact that there's a pretty large delta between them exercising Svengali-like control over the company or being completely ignored indicates that they can't be performing functions similar to directors. Is it that simple? I believe it's that simple, Your Honor. I believe it's that simple. Without the power to vote, they cannot direct or step into the shoes of directors or act like directors. And that should be the end of the inquiry. What's the meaning of the statute? What is your meaning of this statute? Well, if we look at the brief discussion... In other words, you're saying we should write a legal opinion saying that under these circumstances, it's not within the statute because the statute talks in terms of what being within its statutory purview. The statute talks about those who are about to become directors, those who are directors, or those who are performing similar functions to directors. The two cases that have ever looked at this language, the Merce case and the Lockheed case, talk about that language was set up for situations where corporations don't name specific individuals to act as directors, but those individuals are, in fact, acting as directors in sort of a de facto determination. That's not what we have here at all. Well, the statute then sweeps into it who? Only people that are actually... Performing the actions of a director. In other words, have the right to vote is what you're saying. With or without a title, as long as they're performing those... Okay. That's what the statute... So your position is, with or without the vote, whether it's obvious or not obvious, that you're not within the purview of the statute? Well, we're not within the purview of the statute because we have no authority to vote or actually direct the affairs of the corporation. Without that, I don't think we fall within it. Can you read Section 11 as targeting or determining who is in a position to ensure that the representations made to the public were truthful and the prospectus? Well, there's different categories within Section 11. Are you talking about Section 11A3? 11A3. Those who are operating the company have that ability to manage and be the gatekeepers to make sure the information and prospectus is accurate. Those who are simply board observers who do not have power don't have that ability. And the reason for naming them in the prospectus, then, is... The underwriter, particularly with a new company, a board observer is someone there to just keep an eye on things for the benefit of the underwriter. They don't know if I do sherry duties to any stockholder, unlike the directors. They can't be removed for cause, unlike directors. Thank you, Mr. Hartzell. Mr. Tremonti. Your Honours, my colleague who just spoke, I think, addressed everything that I had planned to address. So, as much as I'd like to have the last word, it almost never happens. Unless the Court has further questions, I have nothing further to add. You've got a minute and a half. I can't resist. What I'm struggling with is this notion that inability to vote is sufficient to carry the day for you. And I'm wondering if... What if your client had the ability to select senior officers to set executive compensation, right? I mean, setting executive compensation was one way to wield a lot of influence over a company, is it not? I agree, Your Honour. So, what if they didn't have a... You know, what if there were a hybrid situation where they had some ability to vote on some things, but they didn't have the ability to vote, but they controlled executive compensation? Your Honour, I could imagine a case that would be more difficult to interpret, given the language of the provision at issue in 11A3. This is not that case. The disagreement that we have with the District Court is exceedingly narrow. Every step of the analysis, I think, we agree with. But here, the notion that you would leave to the jury this question, given the evidence of what is in the registration statement, there are, I believe, 20-some-odd specific powers that are enumerated for the board members, for the directors. It includes everything, right? So, to your point, Your Honour, it's not even close to one of these potentially more ambiguous cases. Even without a bright-line rule, on these facts, with this registration statement, every single meaningful power is reserved exclusively to the directors. Our clients can only observe and have the potential, as the Court has articulated, to significantly influence, but not any of the specifically enumerated powers that you would need to control the company. I know you don't agree with this, but if this was a fraud and a flim-flam operation, if we agree with your reading of the statute, does that mean that Mr. Rosen's clients are without a remedy? That there's this lacuna in the law here that provides victims of this sort of thing with no remedy? No, Your Honour, definitely not. There are any number of other statutory and common-law causes of action that could be brought and, in fact, were brought and rejected or abandoned in this case. This is one very narrow provision that targets a very specific class of corporate actors who control the company and gives plaintiffs the ability to sue them under what is essentially a strict liability standard. There are other ways to get at individuals and entities that are engaged in or utilized for that purpose. Maybe not if they're foreign nationals, though. And therein lies the problem, perhaps. I don't have at my fingertips a catalogue of all potentially useful causes of action, but I have been involved in enough cross-border cases, both civil and as a prosecutor, a federal prosecutor. I think there are any number of ways to go after foreign bad actors, both civilly and criminally, and I don't think that's a problem we face here. I think the bigger problem we have here is you've got a situation where a district court, on a record that's very clear, that's not close, decided in just the last step of the analysis to put the question of interpreting the statute in the hands of the jury, which is going to create mischief because now your regulatory scheme could turn out differently every single time it goes to trial, and you could have observers in this courtroom who don't have any of the powers of directors held liable under it, and observers in another courtroom on the same exact facts. You're going to have a jury come to a different conclusion, and that's just not appropriate. Thank you, Mr. Tremonti. Thank you. Thank counsel for the excellent briefing and argument. We'll take the matter under advisement.